UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
TAMARA SILVERMAN,                                          Case No. 1:17-cv-00207-AMD-RER

                                    Plaintiff,

            -against-                                      AMENDED COMPLAINT

The New York City Administration For Children's
Services, and the City of New York,                       PLAINTIFF DEMANDS
                                                          A TRIAL BY JURY


                                    Defendants.

-------------------------------------------------------------------x


            Plaintiff, Tamara Silverman, ("plaintiff" or "Silverman") through her attorney,

David L. Silverman, Law Offices of David L. Silverman, complains of defendant City

of New York ("defendant City of New York"), and Administration for Children's

Services ("defendant ACS" or "defendant" or "ACS"),  as follows:


                          **JURISDICTION AND VENUE**

1.          This Court has jurisdiction over plaintiff's claims as plaintiff resides in the County of

            Queens, and has throughout the tenure of the acts complained of, and at all times relevant

            herein.  The removal of this action to the Federal District Court based upon the existence

            of a federal question does not impair or impede the jurisdiction of this Court to hear this

            matter.


2.          Plaintiff does not challenge, or seek to remand this matter to Queens County Supreme

            Court.


3.          Upon information and belief, defendant New York City Administration for Children's

            Services (also referred to as or "ACS," "defendant," "defendant agency," or "defendant

            ACS"), subsists as an agency of the City of New York (also referred to as "defendant

New York City" or "defendant City"), existing under and by virtue of the laws of the State and City of New York, and maintaining a juvenile secure detention facility in the County of Kings, a borough within the City of New York, in the City of New York where plaintiff at all times herein was employed by the defendant, and where the majority of the causes of action arose. Accordingly, defendants New York City and ACS are subject to the jurisdiction of this Court.

4.      Plaintiff has pursued all available administrative remedies prior to commencing this lawsuit with the Equal Employment Opportunity Commission (EEOC), which rendered a final decision ("right to sue letter,") on September 30, 2016, a true and correct copy of which is annexed hereto as Exhibit A, and incorporated herein by reference, concerning plaintiff's Complaint for Discrimination filed on October 27, 2014, a true and correct copy of which is annexed hereto as Exhibit B, and incorporated by reference herein; and which was supplemented on June 11, 2015, a true and correct copy of which is annexed hereto as Exhibit C, and incorporated by reference herein.

5.      The "right to sue" letter was dated September 30, 2016, was postmarked on October 3, 2016, and received by plaintiff on October 5, 2016. Plaintiff has fully complied with the administrative prerequisites for bringing this action, and is timely in doing so.

6.      The letter of September 30, 2016 explicitly states that the EEOC, citing its "limited resources," "does not certify that the Respondent is in compliance with the statutes."

7.      Defendant ACS and defendant City of New York both constitute an "employer" within the meaning of all statutes and regulations cited herein, and which form the basis of plaintiff's allegations. Plaintiff caused a copy of this Complaint to be served on the Corporation Counsel of the City of New York, 100 Church Street, New York, New York,

2

which accepts process for both defendants.

8.    Plaintiff reserves the right to amend this Complaint to include the true names and capacities of individuals now unknown, or now known but who have not been named individually as defendants, when information concerning their participation in the wrongful acts alleged herein become more fully ascertained.

## NATURE OF ACTION

9.    Since 2013, plaintiff Silverman has been subjected to disparate treatment because of her protected status under Federal, New York State, and New York City anti-discrimination employment statutes.

10.    Plaintiff brings this action to remedy discrimination (i) based on her age in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the New York State Human Rights Law, Executive Law § 296 et seq. (the "Executive Law");' and the Administrative Code of New York § 8-101 et seq. (the "City Law"); (ii) based on her disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. Chapter 126 ("ADA") and the Civil Rights Act of 1964; (iii) based on her age, race and religion, in violation of Title VII of the Civil Rights Act of 1964, as well as under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the New York State Human Rights Law.

## FACTUAL ALLEGATIONS
### Silverman's Background and Performance History

11.    Silverman is a 66 year old White, Jewish female with qualifying disability.  Plaintiff has

3

been employed by ACS for the past ten years, first at the Horizon Juvenile Center in the Bronx, as a Case Manager, then at Bridges Juvenile Center, as a Supervisor 1 SS . In 2011, plaintiff was transferred to the Crossroads Juvenile Center, 17 Bristol Street, Brooklyn, New York. Plaintiff was promoted to Supervisor SS I in 2010. During her entire tenure of employment, Silverman has been a dedicated civil servant for the City of New York, always ensuring that the children, whose ultimate case management care is her responsibility, are well served. Silverman is the only white, Jewish, elderly and disabled supervisor at Crossroads.

12.  As Silverman approached her 63rd birthday, ACS actively engaged in an effort to make her life at Crossroads so miserable that she would retire early. Since early 2013, Silverman has been subjected to disparate treatment because of her protected status. Silverman's immediate Supervisor, Yshanda Springer, Director of Programs (DOP) at Crossroads, along with Louis Watts, Executive Director of Crossroads, and Jennifer Romelien, Executive Director of ACS-DYFJ, have all conspired to force plaintiff's termination through a series of continuing acts of harassment and intimidation.

13.  Notable among its illegal actions, ACS has (i) deprived plaintiff of the promotion to Supervisor II SS, to which she was entitled based upon her performance in a civil service examination; (ii) falsified and devalued plaintiff's performance evaluation; (iii) refused to investigate plaintiff's allegations of harassment and discrimination which had been occurring – and had been complained of – since 2013; (iv) retaliated against plaintiff for filing a complaint with the EEOC; and (v) created a hostile work environment through pervasive acts of malice with the intent (unsuccessful) to force plaintiff to terminate her employment with defendant.

14.  During a contentious three-day hearing held in 2014 at the New York City Office of

4

Administrative Trials and Hearings ("OATH"), an administrative agency of the City of New York which rendered an "advisory" opinion[1] to ACS sustaining two and rejecting one of the disciplinary charges brought against Silverman.   During the hearing, Silverman was universally praised by the six Case Managers she supervises, each testifying that Silverman was dedicated, competent, respectful, and gifted with the children at the facility.

### Refusal of Defendant ACS to Promote Plaintiff

A.   *Silverman Was the Only Person within the class of persons eligible for promotion to "Supervisor II SS" in the entire City of New York Who Was Denied Promotion*

15.   Silverman has, throughout her tenure at Crossroads, often been sought out by the Director of the Facility, Louis Watts, to perform especially difficult tasks which neither he, nor Silverman's other supervisors, Jennifer Romelien, Executive Director of Programs, nor Yshanda Springer, Director of Programs, were competent to accomplish.

16.   ACS, in its hiring practices for supervision and managerial positions at Crossroads, has favored younger, non-white employees. Silverman was intentionally passed over for promotion to Supervisor II SS in 2013, despite the fact that plaintiff was "DCAS"confirmed on 11/15/2012, and achieved high scores on both DCAS Supervisor I and II certified tests. (Silverman placed number 3 on Supervisor I, and Number 32 on Supervisor II.)   Every other candidate eligible for promotion at the time Plaintiff was passed over was promoted "in place," meaning that the candidates job title was augmented, but the candidate's responsibilities generally remained unchanged.   ACS

---

[1]

> Pursuant to New York City statute, ACS was free to adopt or reject the determination of OATH, thus rendering the determination of OATH merely advisory in nature.

alleged in its EEOC "Position Statement" dated March 12, 2015, that "a decision was made not to promote plaintiff" because, as defendant alleged, there was an "open" disciplinary matter pending against plaintiff. Yet at the same time Defendant admitted that as a result of a "resolution" with the union, *all other individuals* eligible for promotion were "promoted in place."

17.     The evidence reveals that contrary to defendant's assertion, there was no "open" disciplinary case pending against plaintiff when defendant promoted all other similarly situated civil servants, entitled to promotion, in December, 2013.  No disciplinary charges were made against plaintiff until May, 2014, and the act for which ACS alleged insubordination did not occur until April 2014, making it impossible for the rationale, which ACS asserts justified its decision not to promote Silverman, to be true or valid. It is clear that defendant's decision not to promote were clearly motivated by malice and by a desire to harm and retaliate against plaintiff.

18.     It is clear that the promotions by ACS of every other person entitled to promotion preceded the disciplinary complaint against plaintiff by at least four months.  Even if plaintiff had been subject to disciplinary action, the decision not to promote her was arbitrary and made an intent to deny Plaintiff the promotion to which she was entitled. Clearly, Defendants' failure to promote Plaintiff was motivated by a desire to illegally discriminate against her based on her protected status.

**B.**     ***Silverman Was Denied Consideration for a Position For Which She Was Qualified in Favor of a Younger Non-White Candidate with no Experience at ACS***

19.     Silverman was also intentionally excluded from consideration for the position of Director of Programs which was ultimately awarded to a younger non-white person with no

6

experience within ACS. In 2013, a position within the ACS became available for Director of Programs. Despite Silverman's experience within the agency, Silverman, who was 62 at the time, was passed over for promotion. Defendant ACS instead hired a much younger person with no experience within the agency for this position who was not white, who was not disabled. Silverman was never given any reason for having been passed over, but it is clear that defendant favored younger persons who were not disabled, who were not Jewish, who were not white, and who were not disabled. Silverman was not homogeneous with the type of Director of Programs that ACS was looking for, and for that reason, she was not considered for the position, ultimately granted to Yshanda Springer.

## Conspiracy Within ACS to Devalue Plaintiff's
## Performance Evaluation and Discredit Her Work

20.     Silverman's supervisors and persons in executive positions at ACS in Manhattan (who had no personal knowledge of Silverman's work) conspired to falsify, doctor, and devalue the "annual" evaluation of Silverman in 2014, an evaluation that ACS alleged in its "Position Statement" dated March 12, 2015, it was required by statute to prepare each year, but then admitted that it had not bothered to prepare for the previous seven years in papers before the EEOC. The evaluation was evidently prepared in furtherance of its efforts to deny plaintiff the promotion to which she was legally entitled and to hasten her departure at ACS.

21.     The falsification of plaintiff's evaluation[2] illustrates but a single example of the

---

[2]

As was revealed during discovery, executives at ACS with no personal knowledge of Silverman's work actively participated in editing, evaluating and suggesting changes to Silverman's evaluation which was prepared in advance of the disciplinary conference with respect to which it was alleged that Silverman had

continued conspiracy by Watts, Springer and Romelien to discredit Silverman's work in general, to question her judgment, and to force plaintiff to terminate her position at Crossroads.

## Silverman's Being Subjected to Disparate
## Treatment by Defendant ACS Since 2013

22.     On April 9, 2014, plaintiff was summoned to what she believed was a one-on-one meeting with the Executive Director Watts.  Upon arrival, plaintiff was informed that it was a disciplinary conference.  Plaintiff was not afforded her legal right to have notice of the disciplinary proceeding, and was denied her right to be represented by an attorney. After twenty minutes of interrogation, plaintiff departed the disciplinary conference.  As a result of defendant's illegal proceeding, plaintiff was charged with insubordination. So outrageous were defendant's actions in convening a disciplinary conference without notice and without allowing plaintiff to be represented by an attorney, that plaintiff developed severe physical symptoms, including heart palpitations and sleeplessness.

23.     Through the actions of DOP (Director of Programs) Springer, defendant improperly and without cause or reason, withheld plaintiff's paycheck from electronic deposit on numerous occasions over a period of three years, forcing plaintiff, who is disabled, to travel at times to defendant's agency offices in Manhattan, to pick up her paper paycheck.

24.     On May 27, 2015, plaintiff properly entered her intention to take a day off for medical reasons on the New York City time management database, "CityTime," due to the fact that she was in pain and needed to see her doctor.  Although not necessary, plaintiff submitted to Springer a Doctor's Note, justifying plaintiff's absence from work.

---

improperly departed.

8

25.  Nevertheless, upon plaintiff's return to work the following day, Springer demanded to see plaintiff in her office. When plaintiff inquired of Springer as to the reason for the summons to her office, Springer stated that she had sent plaintiff an email requesting plaintiff's presence in her office, but then admitted that she had "forgotten" to send the email. In any event, upon her arrival at Springer's office, Springer stated that since plaintiff had not emailed Springer the previous day advising her that plaintiff would not be coming into the facility the following day, Springer alleged that plaintiff was "AWOL," and proceeded to blackmail plaintiff by stating that plaintiff's earned wages would be withheld until plaintiff relented and indicated on her timesheet that she had been absent without leave.

26.  Five days later, defendant ACS immediately relented and paid plaintiff the wages she had earned when its attorneys were advised of the situation and warned that unless plaintiff's wages were immediately released, immediate legal action, including referral to the appropriate authorities, would ensue. (A true and correct copy of the letter sent by Plaintiff's attorney, dated July 17, 2015, is annexed hereto as Exhibit D.)

27.  Among plaintiff's other duties as supervisor, she sets and modifies the Case Managers' schedules for each particular workday. Plaintiff's supervisors - to reiterate her claims of harassment – have continuously and improperly questioned her judgment in executing electronic evaluations for all seven Case Managers at Crossroads, who work directly under her supervision. Among plaintiff's other duties as supervisor over seven case managers, one is to modify schedules of those persons whom plaintiff supervises, and to evaluate their performance. Springer, Romelien and Watts have attempted to illegally coerce plaintiff into altering completed evaluations so that the evaluations falsely portray the Case Managers as deficient, when they are in all respects satisfactory or excellent.

9

Defendant has also attempted to coerce plaintiff into denying overtime for case managers, who have earned overtime wages.

### Defendant's Discrimination
### Based on Plaintiff's Religion

28.     Supervisors at ACS have repeatedly made disparaging remarks to plaintiff concerning her religious observance, have refused to allow plaintiff to practice her religious observances in peace.  Silverman thus had to request special accommodation through the Equal Employment Office ("EEO") at ACS.  Defendants Watts, Romelien and Springer have retaliated against plaintiff for practicing her religious observance by repeatedly scheduling unusual conferences and making unusual, complicated, and time-consuming tabulating and/or statistical requests on the day immediately preceding important religious holidays.

29.     Plaintiff has been subjected to a pattern of constant disparaging remarks concerning her religion and religious observance.  Defendants repeatedly questioned plaintiff concerning her observance of Jewish holidays and referred to important religious holidays as "vacations."   Defendants refused to allow plaintiff to observe the Sabbath unless defendant received a letter from an orthodox Rabbi attesting to the fact that plaintiff was Jewish and observant.

### Retaliation For Filing an EEOC Complaint, For Litigating at
### OATH, and For Refusing to Falsify Subordinates' Evaluations

30.     Beginning in August 2014, only four weeks after the OATH hearing in which plaintiff had subpoenaed her three supervisors (Watts, Romelien and Springer), and shortly after Silverman had commenced EEOC proceedings by filing her EEOC "intake," Defendant's supervisors Watts, Romelien and Springer began repeatedly summoned plaintiff for

10

grueling weekly, ostensibly "supervisory," hour-hour-and-a-half long meetings, during which time plaintiff was interrogated by Watts, Romelien and Springer. These meetings had never taken place prior to August, 2014. The meetings were calculated to cause plaintiff stress and anxiety. Despite the fact that plaintiff's work was excellent in every respect, she was mocked and belittled by Springer, Watts, and Romelien. When a complaint was made to executives at ACS in Manhattan, defendant ACS admitted that those meetings could only be convened on a monthly basis, admitting Defendant's impropriety.

31.     Also in August 2014, four weeks after the OATH hearing, an essential in-house training was conducted at Crossroads. The "Missouri Module" was critical to the career advancement of Silverman, who was singled out and not invited to attend the training. All other supervisors of Silverman's rank were invited to attend. When Silverman learned of the training through the public address system, she decided to attend the Module herself. While Defendant purposefully excluded plaintiff from the training, by failing to invite her, they did not go to the extreme and order her to leave the training. Evidently, this was because defendant knew that it had acted improperly in failing to invite Silverman. While attending the module, Silverman recognized many other supervisors of plaintiff's identical rank in attendance. A copy of a letter sent by Silverman's attorney to defendant, and defendant's response, is annexed collectively as Exhibit E.

32.     On one occasion, the Silverman accepted the request of a Case Manager to arrive a half hour late because of extenuating circumstances. Springer accused Silverman of "falsifying" documents. Clearly, Springer was angry that her past actions were now being reviewed and evaluated for violations of federal, state and city law in response to plaintiff having filed an EEOC claim. Springer has vexed, harassed, and publically

11

humiliated and defamed the Plaintiff at her place of business. Executives at Defendant ACS have also demonstrated a wanton disregard of federal, state and city law, since they actively encouraged the filing of false disciplinary charges by these individuals, and the efforts of Watts, Springer and Romelien, which the evidence shows unceasingly sought to vilify, illegally discriminate against, and harass Silverman.

33.     Seeking to advance herself within ACS, plaintiff requested admission to a conference being hosted by John Jay College of Justice on January 23, 2017. Plaintiff received an invitation to that conference and planned to attend. On January 13th, 2017, Silverman received an email from Stephanie Wilson, who is Director of Special Projects at ACS. In her email, Wilson stated that Defendant ACS was "unable to accommodate your registration request." After receiving this email, Silverman responded "This is very unfortunate. However, I do have a ticket to this event already, so my reservation was accepted by someone. Should I attend with my ticket or not? A copy of the invitation, Wilson's email, and Silverman's email response are annexed hereto collectively as Exhibit F. Silverman received no response from Wilson and attended the conference without consequence.

34.     Evidently, defendant even after being sued for discrimination, continues to seek to discriminate against Silverman, by preventing her from attending conferences which would help her advancement within the agency.

### Refusal to Provide Plaintiff With
### Available Handicapped Parking

35.     Plaintiff is disabled, and walks with great difficulty, using a cane. Plaintiff's disability was so acute that plaintiff was issued a handicapped parking permit from the City of New York in 2014. Despite repeated requests of plaintiffs Watts and Romelien for available

parking within the inner perimeter of the facility for handicapped, neither Watts, Romelien, nor Springer, ever addressed Silverman's requests. The result has been that plaintiff has had to park often far from the facility, and faces the danger of slipping on snow or ice, or being assaulted in the unsafe neighborhood in which she works. At the EEOC "fact-finding", held in April 2016, Romelien acknowledged plaintiff had made requests for handicapped parking, and admitted that neither she nor anyone at ACS had acted on plaintiff's repeated requests.

## Hostile Work Environment

36.     Since the appointment by Watts of Springer as Director of Programs in the summer of 2013, Silverman's work environment at Crossroads has become a living hell. Springer has sought to undermine, discredit and collude with ACS and its supervisors against Silverman. Watts has turned a blind eye and at times even encouraged Springer's harassment, and has at times been complicit in Defendant's efforts to impede, harm, discredit, defame and otherwise take illegal discriminatory actions against Silverman. This, despite the fact that Silverman's work had been consistently praised at ACS until Springer's arrival.

37.     Springer, Watts and Romelien have attempted to force plaintiff into altering completed electronic evaluations for those Case Managers, whom plaintiff supervises, so that those evaluations falsely portray the Case Managers' work performance in a negative fashion, when in fact those Case Managers' work had been satisfactory or excellent. Following plaintiff's refusal to falsely evaluate the Case Managers, whom plaintiff supervises, defendants retaliated against plaintiff.

38.     ACS refused to investigate plaintiff's repeated complaints that she was being harassed

13

and discriminated against by plaintiff's supervisors, Watts, Romelien, and Springer. Defendant's later allegation in its Position Statement that it had no notice is belied and flatly contradicted by voluminous documentary evidence.  Defendant made plaintiff's work environment at Crossroads, where plaintiff worked, a living hell, and subjected plaintiff to a permanent, hostile work environment.  Springer began harassing plaintiff by sending her a daily barrage of emails – on one occasion more than twenty emails in a four-hour period.

39.     To further retaliate and harass the plaintiff, in April of 2015, the defendant Springer lodged a charge of "insubordination" against the plaintiff which was thrown out by the ALJ at the OATH hearing.  Despite the falsity and maliciousness of Springer's charge, the plaintiff was put through three days of a grueling hearing at OATH, and had to engage a lawyer to defend against this frivolous charge.  The plaintiff was also defamed and humiliated by Springer's charge, and as a proximate result has suffered severe emotional distress, manifesting itself in physical symptoms.

### FIRST CAUSE OF ACTION
(Discrimination on Basis of Age, Color, and Religion)

40.     Plaintiff repeats and realleges the allegations in paragraphs 1-39.

41.     Plaintiff alleges that ACS has engaged in  employment discrimination under Title VII, as well as under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the New York State Human Rights Law (NYSHRL), since she is (i) a member of a protected class; (ii) she is qualified for the position sought; (iii) she suffered adverse employment action; and (iv) the adverse employment action occurred in circumstances giving rise to an inference of discrimination.

14

42.     Defendant, and its agents and employees, intentionally discriminated against plaintiff with respect to her compensation, terms, conditions, and privileges of employment, because of plaintiff's race, color, and religion, in violation of Title VII of the Civil Rights Act of 1964, as well as the New York State Human Rights Law (NYSHRL). Defendants engaged in forbidden acts by classifying plaintiff in such a manner as to adversely affect her status as an employee by reason of plaintiff's race, color, and religion.

43.     Defendants knew that its actions constituted unlawful discrimination and/or acted with malice or reckless disregard for plaintiff's statutorily protected rights. These violations were willful within the meaning of the Civil Rights Act of 1964, as well as the New York State Human Rights Law.

44.     Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to her reputation as a result of defendants' discriminatory practices unless and until this Court grants relief.

## SECOND CAUSE OF ACTION
### (Discrimination Based on Disability)

45.     Plaintiff repeats and realleges the allegations in paragraphs 1-44.

46.     Defendant violated the Americans with Disabilities Act of 1990, 42 U.S.C. Chapter 126 ("ADA") by illegally discriminating against plaintiff, who is disabled.

47.     By the acts and practices described above, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her age in violation of the Americans with Disabilities Act of 1990.

15

48.   Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to her reputation as a result of defendants' discriminatory practices unless and until this Court grants relief.

49.   Plaintiff's mental anguish and devastation proximately caused by Defendants' egregious treatment of Plaintiff, is compensable with respect to Plaintiff's New York State law claims in federal ADEA actions "without evidence of medical treatment or other concrete proof of duration, extent, and consequences." See *Castelluccio v. IBM*, Civ. No. 3:09CV1145 (TPS), quoting *Cross v. NYC Transit*, 417 F.3d 241, 2nd Cir. (2005).

### THIRD CAUSE OF ACTION
(Employment Discrimination – Age Under ADEA)

50.   Plaintiff repeats and realleges the allegations in paragraphs 1-49.

51.   By the acts and practices described above, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her age, by unlawfully failing to promote her in circumstances where plaintiff was entitled to be promoted, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, the New York State Human Rights Law ("NYSHRL"), NY CLS Exec. § 196(a), and the Administrative Code of New York, §8-101 *et seq.*, which forbid an employer from discriminating against persons forty years or older.

52.   Defendants knew that its actions constituted unlawful discrimination and/or acted with malice or reckless disregard for plaintiff's statutorily protected rights. These violations were willful within the meaning of the ADEA, as well as the operative New York State and New York City Statutes.

16

53.     Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to her reputation as a result of defendants' discriminatory practices unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION
### (Employment Discrimination – Age Under Executive Law)

54.     Plaintiff repeats and realleges the allegations in paragraphs 1-53.

55.     By the acts and practices described above, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her age in violation of the Executive Law, § 296 *et seq*. (the "City Law").

56.     Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to her reputation as a result of defendants' discriminatory practices unless and until this Court grants relief.

## FIFTH CAUSE OF ACTION
### (Employment Discrimination – Age Under the City Law)

57.     Plaintiff repeats and realleges the allegations in  paragraphs 1-56.

58.     By the acts and practices described above, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her age in violation of the City Law.

59.     Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to her reputation as a result of defendants' discriminatory practices unless and until this Court grants relief.

### SIXTH CAUSE OF ACTION
**(Retaliation – Filing EEOC Claim)**

60.     Plaintiff repeats and realleges the allegations in paragraphs 1-59.

61.     Defendant violated the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq., and the New York State Human Rights law, by retaliating against plaintiff for alleging harassment and bias at defendant's agency, and by later filing an EEOC claim against defendant.  Plaintiff's contesting of the disciplinary charges, as well as her filing of the EEOC claim were protected activities within the meaning of the statutes referred to above.

62.     Defendant's actions in retaliating against plaintiff creating and subjecting plaintiff to a hostile work environment were harmful to plaintiff. The adverse employment action taken against plaintiff took place in a time frame from which it may be reasonably inferred that defendant's action in failing to promote plaintiff, and its subjecting plaintiff to a hostile work environment was directly related to plaintiff's complaints of harassment, and her filing of an EEOC claim against defendant. (Exhibit A).

63.     Defendants knew that its actions constituted retaliation and/or acted with malice or reckless disregard for plaintiff's statutorily protected rights.  These violations were willful within the meaning of the ADEA.

64.     Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, defendants, and each of them, have engaged in discriminatory practices against her which are not yet fully known.  At such time as said discriminatory practices become known to her plaintiff will seek leave of the court to

18

amend this Complaint in that regard.

## SEVENTH CAUSE OF ACTION
### (Hostile Work Environment)

65.     Plaintiff repeats and realleges the allegations in  paragraphs 1-64.

66.     Plaintiff's allegations which taken collectively or individually evince a continuing
        pattern of harassment, intimidation and retaliation by defendants comprise allegations
        sufficient to maintain a cause of action for a hostile work environment, first
        articulated by the Fifth Circuit in 1971, in *Rogers v. EEOC*, 454 F.2d 234 (5th Cir.
        1971).

67.     Defendants' actions in creating and subjecting plaintiff to a hostile work environment
        were pervasive and were harmful to plaintiff. These actions took place in a time
        frame from which it may be reasonably inferred that actions complained of were
        calculated to create an environment so severe and pervasive that plaintiff would not
        be able to continue to work in such an environment, and would be forced to
        discontinue her employment.

## EIGHTH CAUSE OF ACTION
### (Defamation)

68.     Plaintiff repeats and re-alleges Paragraphs 1 through 67.

69.     On or about April 9, 2014, defendant caused to be prepared, circulated, and published
        a false and defamatory evaluation against plaintiff.  On or about April 9, 2014,
        defendant caused to be prepared, circulated and published scurrilous, meritless, false
        and defamatory disciplinary charges against plaintiff.  Plaintiff is informed and

19

believes, and based on that information and belief alleges, that at all times mentioned in this complaint, defendants published defamatory matter, to wit, (i) a contrived false annual evaluation and (ii) a compilation of false charges, intending to cause those reading the false charges to believe plaintiff to have been derelict in her duties.

70.    Upon information and belief, the complaint was seen and read by numerous persons with whom plaintiff works. The charges against plaintiff and the annual evaluation were false in their entirety, and defendant published them with knowledge of their falsity or with reckless indifference to their truth. The charges against plaintiff, even if ultimately found to be false and libelous in a Court of law, have been be published on the internet, thus exposing plaintiff to a lifetime of hatred, contempt, ridicule and obloquy.

71.    Upon information and belief, the charges against plaintiff were libelous on their face, and were intended to, and did in fact, expose plaintiff to hatred, contempt, ridicule and obloquy because plaintiff works at the facility. As a proximate result of the above-described publication, plaintiff has suffered loss of her reputation, shame, mortification, and injury to her feelings. The above-described publication was not privileged because it was published with malice, hatred and ill will toward plaintiff and the desire to injure her.

## NINTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

72.    Plaintiff repeats and re-alleges Paragraphs 1 through 71 as if fully reproduced herein.

73.    Upon information and belief, plaintiff was emotionally traumatized and devastated by defendant's action in falsely accusing her of grievous actions. Defendants usurped

20

the administrative tribunal system of the City of New York to commence frivolous and meritless charges against the plaintiff. Defendants acted with malevolence, hatred, and contempt toward plaintiff by bringing meritless charges against plaintiff, and by destroying the reputation of plaintiff by causing such charges to ultimately be posted on the internet.

74.     The realization that plaintiffs have intentionally sought to publicly humiliate her by falsely alleging scurrilous charges, and usurping the administrative tribunal system of the City of New York to consummate a vendetta against plaintiff has caused plaintiff severe emotional distress, resulting in physical symptoms. Defendant's acts were, and have continued to be until this date, extreme and outrageous, and have taken a devastating toll on Plaintiff's emotional and physical health.

75.     Upon information and belief, defendant's acts were malicious and oppressive, were done with a conscious disregard of plaintiff's rights, and were intended to injure plaintiff and to cause plaintiff extreme emotional distress.   Even if not intended to cause plaintiff extreme physical and emotional distress, they were undertaken with blatant disregard of a substantial probability of causing plaintiff severe physical and emotional distress.

76.     To the extent executives, attorneys and other employees of ACS not employed at Crossroads are not otherwise liable for the tort of intentional infliction of emotional distress, their brazen disregard, and consequent ratification, of those actions taken by plaintiff's supervisors who were employed at Crossroads, defendant ACS and defendant New York City are fully liable for punitive damages, and plaintiff is entitled thereto.

77.    Plaintiff is entitled to punitive damages from both defendants for the actions taken by its employees who were not employed at Crossroads, for their outrageous actions which were intended to and which did, cause plaintiff extreme emotional distress.

78.    As a proximate cause of defendant's extreme and outrageous conduct, plaintiff has suffered extreme emotional distress, and will continue to suffer extreme emotional distress for the rest of her life.  Upon information and belief, defendant's threats and intimidation of plaintiff have been intentional and deliberate.  Upon information and belief, defendant is liable for the extreme emotional and physical distress which his deliberate, intentional and cruel actions have caused Plaintiff.

### TENTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

79.    Plaintiff repeats and re-alleges Paragraphs 1 through 78 as if fully reproduced herein.

80.    Upon information and belief, defendant was under a duty to plaintiff not to cause her extreme physical and emotional distress.

81.    Upon information and belief, defendant, having acted egregiously and malevolently towards plaintiff, caused plaintiff extreme physical and emotional distress.

82.    Upon information and belief, defendant's actions in causing plaintiff extreme physical and emotional distress, even if not intentional, were negligent.

WHEREFORE, plaintiff respectfully requests that this Court enter a Judgment declaring, enjoining, and directing the following:

22

a.   **<u>DECLARING</u> [ i through xix]**:

i.       Declaring that defendants' conduct complained of herein violates plaintiff's rights under Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 *et seq*. ("ADEA");

ii.      Declaring that defendants' conduct complained of herein violates plaintiff's rights under the New York State Human Rights Law, Executive Law § 296 *et seq*., ("Executive Law");

iii.     Declaring that defendants' conduct complained of herein violates plaintiff's rights under the Administrative Code of New York § 8-101 *et seq*. ("City Law");

iv.     Declaring that defendants have engaged in employment discrimination under Title VII of the Civil Rights Act of 1964;

v.      Declaring that defendants have engaged in employment discrimination under the New York State Human Rights Law (NYSHRL);

vi.     Declaring that defendants conduct complained of herein violates the Americans with Disabilities Act of 1990, 42 U.S.C. Chapter 126 ("ADA");

vii.    Declaring that defendants retaliated against plaintiff for asserting her rights under (a) The Civil Rights Act of 1964; (b) the ADEA, (c) the NYS Human Rights Law; (d) the NYS Human Rights Law; and (e) the Administrative Code of the of New York ("City Law").

viii.   Declaring that defendants' conduct evinced a continuing pattern of harassment, intimidation, and retaliation sufficient to establish a cause of action for a hostile work environment;

ix.     Declaring that defendants' conduct in creating and subjecting plaintiff to a hostile work environment were pervasive and harmful to plaintiff;

x.      Declaring that defendants are liable for the tort of defamation;

xi.     Declaring that defendants' conduct in defaming plaintiff violated all of the above-referenced federal anti-discrimination statutes;

xii.    Declaring that defendants' conduct in defaming plaintiff violated all of the above-referenced New York State anti-discrimination statutes;

xiii.   Declaring that defendants' conduct in defaming plaintiff violated all of the above-referenced New York City anti-discrimination statutes;

xiv.    Declaring that defendants are liable for the tort of defamation

xv.     Declaring that defendants are liable for intentional infliction of emotional distress or, in the alternative, negligent infliction of emotional distress;

xvi.    Declaring that defendants' conduct in intentionally (or negligently) inflicting emotional distress upon plaintiff violated all of the above-referenced anti-discrimination statutes;

xvii.   Declaring that defendants' conduct in intentionally (or negligently) inflicting emotional distress upon plaintiff violated all of the above-referenced federal anti-discrimination statutes;

xviii.  Declaring that defendants' conduct in intentionally (or negligently) inflicting emotional distress upon plaintiff violated all of the above-referenced New York State anti-discrimination statutes;

xix.    Declaring that defendants' conduct in intentionally (or negligently) inflicting emotional distress upon plaintiff violated all of the above-referenced New York City anti-discrimination statutes;

b.   **ENJOINING**

i.      Enjoining and permanently restraining defendants from violating the federal, New York State and New York City anti-discrimination statutes recited in (i) through (xix) above;

ii.     Enjoining and permanently restraining defendants from defaming

24

plaintiff; violating the federal, New York State and New York City anti-discrimination statutes recited in (i) through (xix) above;

c.    **DIRECTING**

    i.    Directing defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

        (1)    Directing defendants to immediately provide accommodative parking facilities for plaintiff;

    ii.    Directing defendants to place plaintiff in the position she would have occupied but for defendants' discriminatory and retaliatory conduct and making her who for all of the earnings and other benefits she would have received but for defendants' discriminatory and retaliatory treating including, but not limited to, wages and other lost benefits;

    iii.    Directing defendants to pay plaintiff compensatory damages for her mental anguish and humiliation;

    iv.    Directing defendants to pay plaintiff liquidated damages under 29 U.S.C. § 626 of the ADEA;

    v.    Directing defendants to pay plaintiff punitive damages for its intentional disregard of and/or reckless indifference to plaintiff's statutory rights;

    vi.    Directing defendants to pay reasonable attorneys' fees and costs;

    vii.    Directing defendants to compensate plaintiff for any adverse tax consequences;

    viii.    Directing defendants to pay prejudgment interest; and

    ix.    Granting such other and further relief as this Court deems necessary and proper.

Dated:      February 15, 2017
               Lake Success, New York

David L. Silverman, Esq.
Attorney for Plaintiff

Law Offices of David L. Silverman
2001 Marcus Avenue
Suite 265A South
Lake Success, NY 11042
(516) 466-5900
dsilverman@nytaxattorney.com

To:

Scott C. Silverman, Esq.
Corporation Counsel of the City of New York
Attorneys for Defendants
100 Church Street, Room 2-107
New York, New York 10007
(212) 356-2450
ssilverlman@law.nyc.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

TAMARA SILVERMAN,                                   Case No. 1:17-cv-00207-AMD-RER

                          Plaintiff,

       -against-

                                                    VERIFICATION

The New York City Administration For Children's
Services, and the City of New York,



                          Defendants.

-------------------------------------------------------------------x


STATE OF NEW YORK        )
                         )ss.:
COUNTY OF NASSAU         )

       TAMARA SILVERMAN,  being duly sworn, deposes and says: that she is the plaintiff
in the above entitled action; that she has read the foregoing VERIFIED AMENDED
COMPLAINT and that it is true of her own knowledge, except as to matters which are therein
stated to be alleged upon information and belief, and as to those matters she believes them to be
true.

                                                    Tamara Silverman
                                                    Tamara Silverman
                                                    144-54 Sanford Avenue, Apt. 67
                                                    Flushing, NY 11355

Sworn to before me this
15th day of February, 2017


Notary Public
State of New York

                                        DAVID L SILVERMAN
                              NOTARY PUBLIC-STATE OF NEW YORK
                                         No. 02SI5035763
                                    Qualified in Nassau County
                              My Commission Expires November 14, 2018

27

# EXHIBIT A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

<u>VIA U.S. MAIL</u>
Ms. Tamara Silverman
144-54 Sanford Avenue, Apt.67
Flushing, NY 11355

Re:   Tamara Silverman v. NYC Administration for Children's Services / DYFJ Crossroads
Juvenile Center
        EEOC Charge No.: 846-2014-26273

Dear Ms. Silverman:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"),
has reviewed the above-referenced charge according to our charge prioritization procedures.
These procedures, which are based on a reallocation of the Commission's staff resources,
apply to all open charges in our inventory and call for us to focus our limited resources on those
cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have examined your charge based upon the
information you submitted. You alleged, among other things, that you were subjected to various
harassing events based on your race and color, (white), sex (gender-female) age, religion
(Judaism) and disability when you were not promoted in 2014, in violation of Title VII of the Civil
Rights Act of 1964, as amended, the Age Discrimination in Employment Act, as well as the
Americans with Disabilities Act of 1990.

Based upon a review of the documents received including your rebuttal and other material, the
Commission is unable to conclude that the information establishes a violation of Federal laws
enforced by this agency.  This does not certify that Respondent is in compliance with the
statutes.  No finding is made as to any other issue that might be construed as having been
raised by this charge. The Commission's processing of this charge has been concluded.
Included with this letter is your Notice of Dismissal and Right to Sue.  Following this dismissal,
you may only pursue this matter by filing suit against the Respondent named in the charge with
90 days of receipt of said notice.  Otherwise, your right to sue will be lost.

Should you have questions, you may contact Investigator Young at (212) 336-3758.

Sincerely,

Kevin J. Berry
District Director

SEP 30 2016
_____
Date

cc:

Law Office of David L. Silverman
2001 Marcus Avenue, Ste. 265A South
Lake Success, NY 11042

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:   **Ms. Tamara Silverman**
      **144-54 Sanford Avenue, Apt. #67**
      **Flushing, NY 11355**

From:  **New York District Office**
       **33 Whitehall Street**
       **5th Floor**
       **New York, NY 10004**

| | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **846-2014-26273** | **D. Young,**<br>**Investigator** | **(212) 336-3758** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|   | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|   | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|   | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|   | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| X | The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge. |
|   | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|   | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Kevin Berry*

**Kevin J. Berry,**
**District Director**

SEP 30 2016

*(Date Mailed)*

Enclosures(s)

cc:
**Ruth Mariampolski, Agency Attorney**
**ACS/DYFJ CROSSROADS JUVENILE CENTER**
**Employment Law Unit**
**110 William Street, 20th Floor**
**New York, NY 10038**

**David Silverman, Esq.**
**LAW OFFICES OF DAVID SILVERMAN**
**2001 Marcus Avenue**
**Lake Success, NY 11042**

## FACTS ABOUT FILING
## AN EMPLOYMENT DISCRIMINATION SUIT
## IN FEDERAL COURT IN NEW YORK STATE

You have received a document which is the final determination or other final action of the Commission. This ends our handling of your charge. The Commission's action is effective upon receipt. Now, you must decide whether you want to file a private lawsuit in court. This fact sheet answers several commonly asked questions about filing a private lawsuit.

### WHERE SHOULD I FILE MY LAWSUIT?

Federal District Courts have strict rules concerning where you may file a suit. You may file a lawsuit against the respondent (employer, union, or employment agency) named in your charge. The appropriate court is the district court which covers either the county where the respondent is located or the county where the alleged act of discrimination occurred. However, you should contact the court directly if you have questions where to file your lawsuit. New York State has four federal districts:

- The United States District Court for the Southern District of New York is located at 500 Pearl Street in Manhattan. It covers the counties of Bronx, Dutchess, New York (Manhattan), Orange, Putnam, Rockland, Sullivan, and Westchester. (212) 805-0136 http://www.nysd.uscourts.gov

- The United States District Court for the Eastern District of New York is located at 225 Cadman Plaza in Brooklyn and covers the counties of Kings (Brooklyn), Nassau, Queens, Richmond (Staten Island), and Suffolk. (718) 613-2600 http://www.nyed.uscourts.gov

- The United States District Court for the Western District of New York is located at 68 Court Street in Buffalo. It covers the counties of Allegheny, Cattaraugus, Chautauqua, Chemung, Erie, Genesee, Livingston, Monroe, Niagara, Ontario, Orleans, Schuyler, Seneca, Steuben, Wayne, Wyoming, and Yates. (716) 551-4211 http://www.nywd.uscourts.gov

- The United States District Court for the Northern District of New York is located at 100 South Clinton Street in Syracuse and covers the counties of Albany, Broome, Cayuga, Chanango, Clinton, Columbia, Cortland, Delaware, Essex, Franklin, Fulton, Greene, Hamilton, Herkimer, Jefferson, Lewis, Madison, Montgomery, Oneida, Onandaga, Oswego, Otsego, Rensselaer, St. Lawrence, Saratoga, Schenectady, Schoharie, Tioga, Tompkins, Ulster, Warren, and Washington. This District Court's pro Se Attorney has offices at 10 Broad Street in Utica New York. (315) 234-8500 http://www.nynd.uscourts.gov

### WHEN MUST I FILE MY LAWSUIT?

Your private lawsuit must be filed in U.S. District Court within 90 days of the date you receive the enclosed EEOC Notice of Right to Sue. Otherwise, you will have lost your right to sue.

(Over)

Enclosure with EEOC
Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* **this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



NEW YORK
NY 100
03 OCT '16
PM 13 L

$ 000.46⁵
PITNEY BOWES
02 1P      OCT 03 2016
0000806097
MAILED FROM ZIP CODE 10004

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

Ms. Tamara Silverman
144-54 Sanford Avenue, Apt.67
Flushing, NY 11355

# EXHIBIT B



### U.S. Equal Employment Opportunity Commission
### New York District Office

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TDD: 1-800-669-6820
Fax: (212) 336-3625
1-800-669-4000

Respondent: ACS/DYFJ CROSSROADS JUVENILE CENTER
EEOC Charge No.: 846-2014-26273
FEPA Charge No.:

November 12, 2014

Tamara Silverman
144-54 Sanford Avenue
Apt. #67
Flushing, NY 11355

Dear Ms. Silverman:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

    [ X ]    Title VII of the Civil Rights Act of 1964 (Title VII)
    [ X ]    The Age Discrimination in Employment Act (ADEA)
    [ X ]    The Americans with Disabilities Act (ADA)
    [ ]      The Equal Pay Act (EPA)
    [ ]      The Genetic Information Nondiscrimination Act (GINA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

Please be aware that we will send a copy of the charge to New York State Division Of Human Rights Federal Contract Unit One Fordham Plaza, 4 Fl. Bronx, NY 10458 as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

While your charge is pending, please notify us of any change in your address, or where you can be reached if you have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

Christopher Kwok
ADR Coordinator
(212) 336-3647

Enclosure(s)

cc:   David Silverman, Esq.
      LAW OFFICES OF DAVID SILVERMAN
      2001 Marcus Avenue, Suite 265A South
      Lake Success, NY 11042

Page 2



# WHAT YOU SHOULD DO
## AFTER YOU HAVE FILED A CHARGE WITH EEOC

> ## *KEEP YOUR DOCUMENTS – BOTH PAPER AND ELECTRONIC*

Now that you have filed an EEOC charge, you must keep anything that might be evidence related to your charge. This includes *all* documents, communications, and electronic information that are potentially related to your EEOC charge, including the harm caused by the discrimination, and all records of your communications with the EEOC. Even if you are not sure whether the information is relevant to your discrimination claim, please do not throw it away or delete it.

> ## *WHAT INFORMATION MUST YOU KEEP?*
> - **Paper documents**, such as:
>   - o  Employee manuals, pay stubs, work schedules
>   - o  Letters, memos, your notes
>   - o  Pictures, drawings, charts, whether or not they contain words
> - **Electronic information**, such as:
>   - o  E-mails, text messages, tweets, and social media posts and pictures
>   - o  Voice messages, video and sound recordings
>   - o  Word processing documents, electronic calendar entries
> - **Electronic memory on devices or the devices themselves**, such as:
>   - o  Memory on computers, laptops, tablets, cell phones
>   - o  Computers, laptops, tablets, cell phones
>   - o  Do not delete, replace, alter, "wipe," or "clear" your computer hard drive, electronic tablet, or cell phone, and do not change or remove Internet posts, without retaining an electronic copy. If you dispose of any old computers, phones or devices, make sure you make and keep an electronic copy of all potentially relevant information on the device.
> - These are some examples and not a complete list.
> - If you have questions about what you should or should not do, please contact your investigator.

*Why must you keep this information?* It might be evidence related to your charge. We are required by the courts to ensure that all potentially relevant information is retained. **Please note that failure to keep these records may cause you to lose your case, or to lose the right to recover money lost due to the discrimination.**

*What happens to your information?* Your investigator will discuss with you what information is needed by the EEOC to investigate your charge. Information that you provide that happens to be private or personal in nature will not be disclosed by the EEOC during its investigation, and if the EEOC files suit on your charge, we will do our best to keep such information out of the court proceedings.

*Please see page 2 for additional important information.*

**Page 1**

## ➢ *LOOK FOR WORK IF YOU ARE OUT OF WORK*

If you lost your job or were not hired due to discrimination, you may be entitled to the pay or wages you lost. However, you cannot receive lost wages unless you can show that you looked for another job to replace the one you lost or were denied due to discrimination. In order to prove you searched for work, you must keep copies of all letters, emails, or other evidence of your job search. If you succeed in finding a new job but it pays less than the job you lost, you may be entitled to the difference in pay. Therefore, it is necessary to keep all evidence of your job search even if you find another job.

In addition to looking for work, you should keep good records of your job search so you can prove that you have tried to find a comparable job. If you are out of work because of discrimination, be sure to save *all* documents and communications, including e-mails, relating to your job search.

---

### ➢ *WHAT ARE RECORDS OF YOUR JOB SEARCH?*

The following types of information can prove that you have tried to find work:
- copies of job applications and resumes

- a list of all the companies you contact about jobs by phone, letter or in-person

- copies of e-mails or letters that you send to or receive from companies where you have asked about work or submitted an application

- a list all of the places where you apply and for each one,
  a. the date of the application;
  b. the position you were seeking;
  c. the response you received from your application, such as rejection letters or invitations to interview;
  d. whether you were interviewed and the date of the interview;
  e. the results of the interview;
  f. whether you turned down a job offer, and if you did, why

- notes about what you did to look for work (for example, searching the newspaper or Internet or contacting employment agencies) and the dates that you conduct the search

- copies of your pay stubs or earnings records if you find another job.

If you have questions about what you are required to do, please contact your investigator.

---

### ➢ *KEEP US INFORMED*

Once you file a charge with the EEOC, you must tell us if you move or get a new address, telephone number, or e-mail address. We may need to talk to you to get more information. If the EEOC cannot reach you to get necessary information, your charge may be dismissed.

### ➢ *CALL IF YOU HAVE QUESTIONS*

Your investigator will discuss with you the documents and other evidence we need to investigate your charge. If you have any questions, or for inquiries about the status of your case, please contact your investigator directly or call 1-800-669-4000.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 846-2014-26273 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Tamara Silverman | (917) 501-3333 | 10-30-1949 |

**Street Address**       City, State and ZIP Code

144-54 Sanford Avenue, Apt. #67, Flushing, NY 11355

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ACS/DYFJ CROSSROADS JUVENILE CENTER | 500 or More | (718) 240-3900 |

**Street Address**       City, State and ZIP Code

17 Bristol Street, Brooklyn, NY 11212

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

**Street Address**       City, State and ZIP Code

---

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☒ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest      Latest

05-15-2014

☐ CONTINUING ACTION

---

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**SEE ATTACHED.**

---

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

| Date | Charging Party Signature |
|---|---|
| | |



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE
ENFORCEMENT UNIT E-1

OCT 27 2014

**DATE RECEIVED**

EEOC Charge No. 846-2014-26273
Silverman v. NYC ACS

Statement of Charging Party

My name is Tamara Silverman. I am a 65 year old White, Jewish Female with a qualifying disability. I believe I have been discriminated and retaliated against because of my Race (white), Age, Religion, Disability and for participating in protected activity (filing an EEOC complaint) by my employer, NYC Administration for Children's Services (hereinafter referred to as "Respondent").

I began my employment with Respondent as a Case Manager in 2006; I have since been promoted to Supervisor I SS. I have been intentionally passed over for promotion to Supervisor II SS, despite the fact that I am DCAS confirmed, and have achieved extremely high scores on both DCAS certified tests. At all times during my employment my performance has been exemplary or better. Since early 2013, I have been subjected to disparate treatment because of my protected status. My immediate Supervisor, Ms. Springer, Director of Programs at Crossroads, along with Mr. Watts, Executive Director of Crossroads, and Ms. Romelien, Executive Director of ACS-DYFJ, have all conspired to force my termination through a series of continuing acts of harassment and intimidation.

On 9 April 2014, I was summoned to what I thought was a one-on-one meeting with my Executive Director. Upon arrival, I was informed that it was a disciplinary conference that was originally scheduled for 3 April 2014. I was not afforded my legal right to have notice of the disciplinary proceeding, and I was denied my right to be represented by my attorney. After twenty minutes of interrogation, during which time I was illegally confined, I departed the conference. As a result of Respondent's illegal proceeding, I was issued charges of insubordination. Respondent has repeatedly attempted to harm me by continuously drafting negative and false evaluations of my work which have become part of my permanent file. The Respondent has repeatedly summoned me for grueling weekly, ostensibly "supervisory", hour-hour-and-a-half long meetings. Notably, high ranking administrative officials at ACS/DYFJ have assisted in this illegal scheme. Until 2013, when the illegal discrimination against me began, all of my evaluations were excellent. In fact, I was even recommended for an award for my exemplary work to benefit the children of New York City.

In August 2014, I was singled out and not invited to attend the Missouri Module Training held at Crossroads. Respondent alleges this training was only intended for Operation Managers, Tour Commanders and Administrative Managers. However, other Supervisors of my rank were invited to attend. When I found out about the training from the PA system, I decided to attend the Module myself. I saw many other Supervisors of my identical rank in attendance.

I believe that by subjecting me to unjust disciplinary harassment and retaliation, Respondent has violated Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990, as amended, and all applicable State and Local statutes.

I affirm that the above statement is true to the best of my knowledge, information and belief.

_Tamara Silverman_                              _October 27, 2014_

Charging Party Signature                      Date

Subscribed and sworn to before me on this date:
October 21, 2014

_David L. Si_

Notary Public

**DAVID L SILVERMAN**
NOTARY PUBLIC-STATE OF NEW YORK
No. 02SI5035763
Qualified in Nassau County
My Commission Expires November 14, 2018

# EXHIBIT C

EEOC Charge No. 846-2014-26273

Silverman v. NYC ACS

Supplemental Statement of Charging Party Alleging Retaliation for Filing EEOC Claim

I am Tamara Silverman, 65, white, Jewish female with a qualifying disability. Since my first charge was filed on October 27, 2014, I have been continuously harassed and retaliated against for participating in protected activity (filing an EEOC complaint), as well as relentlessly discriminated because of my Race (white), Age, Religion (Judaism) and Disability. The continuous discrimination, harassment and retaliation have been perpetuated by the following individuals, employed by NYC Administration for Children's Services: Yshanda Springer, Director of Programs at Crossroads Juvenile Center, together with Louis Watts, Executive Director of Crossroads, and Jennifer Romelien, Executive Director of ACS/DYFJ, who have all illegally conspired against me by perpetrating a continuing series of actions intended to harass and intimidate me.

Since my original Charge No. 846-2014-26273 was filed on October 27, 2014, I am continuously summoned for weekly hour/hour-and-a-half long grueling so called "supervisory" sessions, all of which include Springer and some of which include Romelien and Watts. I am subjected to pointless, needless and useless regurgitations of my supervisory activities for the preceding week. These interrogations are superfluous, since all the information elicited has already been submitted through voluminous email exchanges during the previous week. The meetings are calculated to cause me stress and anxiety and create a hostile work environment. My work, which is excellent, is mocked and belittled by these individuals.

These individuals mock and impede my work as a supervisor of the Case Management Unit at Crossroads, where I supervise six Case Managers. Among other duties, I set and modify the Case Managers' schedules for each particular workday. The above referenced individuals against whom I previously – and now reiterate my claims of harassment – have continuously and improperly questioned my judgment in executing electronic evaluations for all six Case Managers at Crossroads who work directly under my supervision.

At times, Springer, Watts and Romelien have attempted to illegally coerce me into altering completed evaluations for those Case Managers so that those evaluations falsely portray the Case Manager's true work performance. Springer, Watts and Romelien have, I believe, illegally attempted to cause those completed evaluations to be modified, so that the six Case Managers' work is reflected in a negative, rather than in a positive, manner. These individuals have acted illegally in attempting to coerce me to alter evaluations that have already been completed. Following my refusal to perform their illegal act, they have then retaliated against me. I allege

that Messrs. Springer, Watts, and Romelien have engaged in a conspiracy to accomplish this illegal result of manipulating the completed evaluations of these six Case Managers.

In performing my duties as a Supervisor, from time to time, I am also entitled to a day off, using my bank of Annual Leave in "City Time." City Time is a New York City time management database. On May 27, 2015, I properly entered my intention to take a day off on that database, for health reasons. Following my return to work the next day, I received a phone call from Yshanda Springer at around noon. Ms. Springer stated: "I expected you in my office." I asked Ms. Springer why. Ms. Springer responded that she had sent me an email requesting my presence in her office. I asked Ms. Springer when she sent that email. Ms Springer paused and then said "I forgot to send the email." In any event, I then went to Ms. Springer's office. Ms. Springer stated that I had not emailed her the previous day stating that I would not be coming into the facility the following day for work. For that Ms. Springer alleged that I was "AWOL." I

I have severe problems walking, due to problems with my legs. I am also afflicted with Ehlers-Danlos syndrome, which makes my treatment more problematic. On that day, when I submitted my request in City Time for a day off, I was in great pain. Although not necessary, I submitted to Ms. Springer a Doctor's Note justifying my absence from work.

To further retaliate and harass me, Ms. Springer, on June 5, 2015, attempted to serve me with a "write up." The last time Ms. Springer served me with a "write up" I had to hire a lawyer, and go through a grueling three-day hearing at the New York City Office of Administrative Trials and Hearings (OATH). Ms. Springer's allegation at that time was that I was "insubordinate" for walking away, when Ms. Springer had summoned me to her office and admitted that she had lied about the reason that she had summoned me to her office. Ms. Springer is attempting to do the same thing now: I have no recourse within ACS, because both Mr. Watts and Ms. Romelien have conspired in making my life miserable – a living hell – at Crossroads. The ALJ threw out Springer's charges as meritless.

On another occasion, I accepted the request of a Case Manager to arrive a half hour late because of extenuating circumstances. Ms. Springer accused me of "falsifying" documents. Clearly, Ms. Springer is angry that her past actions are now being reviewed and evaluated for violations of Federal law in response to my EEOC claim and my Article 78 Proceeding which will proceed to the Appellate Division. The response of Ms. Springer has been to vex and harass me by attempting to find fault in my work, where there is none. The New York City Agency for Children's Services is also complicit in the violations of Federal law which are occurring, since they actively encourage the filing of false charges by these individuals. I have little doubt that I might be called into another ACS Kangaroo court. Springer, Watts and Romelien are actively engaged in a witch hunt. NYC ACS condones this witch hunt.

My only legal recourse at this point (other than to refute the previous charges which led to a 23 day suspension) is the EEOC. Accordingly, I respectfully request that EEOC investigate my

claim of illegal harassment and other violations. The work environment in which I have been forced to endure is hostile and inhuman. It is insipid. These individuals, Watts, Springer and Romelien, are actively engaged in a conspiracy to demean my work, belittle my judgment, to make my life a living hell at Crossroads. They have conspired to achieve this end. ACS and these individuals should be held accountable for their violations of Federal law.

I believe that by continuously subjecting me to unjust disciplinary harassment and retaliation, the Respondent is violating Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, as amended, the Age Discrimination in Employment Act of 1967 and all applicable State and Local statutes (NYSHRL and NYCHRL).

I affirm that the above statement is true to the best of my knowledge, information and belief.

_Tamara Silverman_                    _June 11, 2015_

Charging Party Signature                    Date

Subscribed and sworn to before me on this date:

June 11, 2015

_David L. Sil_

Notary Public

DAVID L SILVERMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 02SI5035763
Qualified in Nassau County
My Commission Expires November 14, 2018

# EXHIBIT D

LAW OFFICES

# DAVID L. SILVERMAN, J.D., LL.M.

2001 MARCUS AVENUE

LAKE SUCCESS, NEW YORK 11042

(516) 466-5900

Telecopier (516) 437-7292

David L. Silverman, Esq.
dsilverman@nytaxattorney.com

Allison S. Bortnick, Esq.
abortnick@nytaxattorney.com

June 17, 2015

Ruth Mariampolski, Esq.
NYC Administration for Children's Services
Office of General Counsel, Employment Law Unit
110 William Street, 20th Floor
New York, NY 10038

RE:     Withholding of Salary of Tamara Silverman

Dear Ms. Mariampolski:

It has come to my attention that Crossroads is withholding Ms. Silverman's paycheck due to a dispute over time entries. I have been advised by my client that she was told by Ms. Springer that unless she entered the time as Ms. Springer directed, her paycheck would be withheld. My client has advised me that she disputes the manner in which Ms. Springer states that the time entry should be made.

I believe that withholding an employee's salary based upon a dispute over how time should be entered is wrong. I further believe that there is an element of coercion present, since I understand Ms. Silverman was told that until she entered the time as Ms. Springer directed, her check would not be released. There is no legitimate rationale for my client's salary being withheld in this case. There is no dispute that she has earned this salary.

Please do not make it necessary for me to bring this matter to the attention of the appropriate authorities for further action.

Sincerely,

David L. Silverman

# EXHIBIT E

LAW OFFICES

## DAVID L. SILVERMAN, J.D., LL.M.
2001 MARCUS AVENUE
LAKE SUCCESS, NEW YORK 11042
(516) 466-5900

David L. Silverman                                                            Telecopier (516) 437-7292
dsilverman@nytaxattorney.com

Allison S. Bortnick
abortnick@nytaxattorney.com

September 23, 2014

Ruth Mariampolski, Esq.
Administration for Children's Services
110 William Street, 20th Floor
New York, NY 10038

RE:    ACS Retaliation Against Tamara Silverman For Filing EEOC Claim

Dear Ms. Mariampolski:

It is obvious that your letter, a copy of which I enclose, is intended to cover up for today's harassment of Ms. Silverman by Mr. Watts and Ms. Springer, who I am advised corralled Ms. Silverman and again kept her in a conference room today for no legitimate purpose. Since the OATH hearing, Ms. Silverman has been subject to interrogation by these individuals every week. Your denial that these interrogations are not retaliatory in nature is false. I was advised by EEOC that ACS was served with notice of the claim months ago. To state that those who have abused and tormented Ms. Silverman and have discriminated against her were not aware of the EEOC claim is fantasy. According to your logic, no employer could be found liable for retaliation simply by virtue of not informing the supervisors committing such unlawful behavior that an EEOC claim had been made. I am advised that the second time today that Ms. Silverman was summoned to Mr. Watt's office, she alleged, in the presence of Ms. Hancock and Mr. Watts: "I am being discriminated against by racists and anti-Semites."

Contrary to what you state, it is no accident that Ms. Silverman was not invited to the Missouri Module, and your assertion that she was not singled out is false. ACS has denied Ms. Silverman the opportunity for career advancement, despite the fact that Ms. Silverman is DCAS Certified Supervisor II. Moreover, the quality of the work of Ms. Silverman is now, and has always been, excellent. Ms. Silverman rejects the credibility of the false and animus-driven "evaluations" being made against her. They are libelous and false. Ms. Silverman hopes and trusts that those now persecuting her will act respectfully towards her and cease their effort to railroad her and unlawfully discriminate against her by reason of the color of her skin, her ethnicity, her disability, and her age.

Sincerely,

David L. Silverman
cc:    Mr. Paul Young, U.S. Equal Opportunity Commission

 Administration for
Children's Services

**Gladys Carrión, Esq.**
**Commissioner**

**Joseph Cardieri**
**Deputy Commissioner,**
**General Counsel**

**Susan Starker**
**Director**

**Office of the General**
**Counsel**
**Employment Law Unit**
**110 William Street**
**20th Floor**
**New York, NY 10038**

**212-676-7179 tel.**
**212-676-7070 fax.**

David L. Silverman
2001 Marcus Ave
Lake Success, NY 11042

September 23, 2014

Dear Mr. Silverman,

I have been asked to respond to your letter dated September 3, 2014, on behalf of
Stephanie Prussack, Associate Commissioner of the Division of Youth and Family
Justice which operates Crossroads Juvenile Center. Please excuse any apparent delay
in replying; Ms. Prussack did not receive the letter until September 18, 2014, because it
was misaddressed. For future reference, Associate Commissioner Prussack's correct
work address is: 150 William St., 7th Floor, New York NY 10038.

With respect to your allegation that weekly meetings are excessive and retaliatory, it is
simply not the case that weekly supervision meetings are an invention of Ms.
Springer's nor that supervision meetings began in July 2014. In June 2013, Associate
Commissioner Prussack issued a policy directing weekly supervision meetings for case
management staff in Secure Detention. A copy of that policy is attached. Also
contrary to your allegation, Ms. Springer's supervision meetings with Ms. Silverman
did not begin this summer but rather began in approximately August 2013.

With respect to your allegation about training, the Missouri Module Training held
August 28, 2014 at Crossroads was intended for Operation Managers, Tour
Commanders, and Administrative Managers. As the only Case Management
Supervisor, Ms. Silverman was not invited to attend, although she was permitted to do
so. Ms. Silverman was not singled out nor excluded as no Case Management
Supervisors were formally invited to this training either at Crossroads or at Horizon
Juvenile Center, another Secure Detention facility where the same training was held
two days earlier on August 26, 2014. The training was neither "essential to her career
advancement" nor required at all for her position.

With respect to your allegation that supervisors including Mr. Watts, Ms. Romelien,
and Ms. Springer "snicker and laugh" at Ms. Silverman, ACS denies that any such
conduct occurred.

Finally, as Mr. Watts, Ms. Romelien, and Ms. Springer were not aware of an EEOC
complaint at the time, they could not have intended to retaliate.

Based on our review of the facts, ACS finds that that retaliatory motive played no role

in complainant's work environment in the incidents described.  We hope that Ms. Silverman will cooperate respectfully with supervision going forward.

Sincerely,

Ruth Mariampolski
Agency Attorney
Office of the General Counsel
Employment Law Unit
Administration for Children's Services
110 William St., 20th Floor
New York, NY  10038

# EXHIBIT F



| Event | |
|---|---|
| **NYC Juvenile Justice Reentry Conference** | |
| Date+Time | Location |
| Monday, January 23, 2017 from 9:00 AM to 5:00 PM (EST) | John Jay College of Criminal Justice 524 West 59th Street New York, NY 10019 |
| | Payment Status |
| | Free Order |
| Order Info | |
| Order #574161810. Ordered by Tamara Silverman on November 23, 2016 2:26 PM | |
| Type | |
| | RSVP |



574161810721535415001

**Eventbrite**

**Do you organize events?**

Start selling in minutes with Eventbrite!
www.eventbrite.com

Tamara Silverman

Case Management Supervisor
Crossroads Juvenile Center
17 Bristol Street
Brooklyn, New York 11212
(718) 240-3850
Tamara.Silverman@acs.nyc.gov

**From:** Wilson, Stephanie (ACS)
**Sent:** Friday, January 13, 2017 4:34 PM
**To:** Silverman, Tamara (ACS)
**Cc:** Knight, Schanequa R (ACS)
**Subject:** Reentry Confernce

Hi Tamara:

Please call me regarding your registration for 24 attendees at the reentry conference on January 23rd.
Unfortunately, we are unable to accommodate your registration request.

Regrads,
Stephanie

Best,
Stephanie

**Stephanie D. Wilson, MSW| Director of Special Projects**
Division of Youth and Family Justice | Office of Policy, Planning and Performance
NYC Administration for Children's Services
Phone: 212-788-8340 | Mobile: 347-756-0586
E: stephanie.wilson@acs.nyc.gov

Confidentiality Notice : This e-mail communication, and any attachments, contains confidential and privileged information for the exclusive use of the recipient(s) named above. If you are not an intended recipient, or the employee or agent responsible to deliver it to an intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination,

From: **Tamara Silverman** tamara49@gmail.com
Subject: **Fwd: Reentry Confernce**
Date: **Jan 19, 2017, 6:44:06 PM**
To: **David L. Silverman** dsilverman@nytaxattorney.com

**Sent from my iPhone**

**Begin forwarded message:**

**From: "Silverman, Tamara (ACS)"**
**<Tamara.Silverman@acs.nyc.gov>**
**Date: January 19, 2017 at 10:30:34 AM EST**
**To: "tamara49@gmail.com" <tamara49@gmail.com>**
**Subject: FW: Reentry Confernce**

Tamara Silverman

Case Management Supervisor
Crossroads Juvenile Center
17 Bristol Street
Brooklyn, New York 11212
(718) 240-3850
Tamara.Silverman@acs.nyc.gov

**From:** Silverman, Tamara (ACS)
**Sent:** Tuesday, January 17, 2017 10:19 AM
**To:** Wilson, Stephanie (ACS)
**Cc:** Knight, Schanequa R (ACS); Silverman, Tamara (ACS)
**Subject:** RE: Reentry Confernce
**Importance:** High

Good Morning:

This is very unfortunate. However, I do have a ticket to this event already, so my reservation was accepted by someone.

Should I attend with my ticket or not?

Thank you.